UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA A. SOMOGY | ) | Case No. 5:06CV3047 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | <u>MEMORANDUM OPINION</u> |
| SOUTHEAST LOCAL SCHOOL DIST. | ) | |
| BOARD OF EDUCATION, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Barbara A. Somogy (plaintiff) filed the present employment action against defendants Southeast Local School District Board of Education (Board) and Steven Sayers,[1] claiming that the decisions to pass over plaintiff for two positions as a high school special education teacher were motivated by unlawful age animus, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq,* and state common law.

Pursuant to Fed. R. Civ. P. 56(c), defendant Board[2] has sought summary dismissal of plaintiff's age discrimination claim, Count I of the Amended Complaint (Docket

---

[1] Along with the Board, plaintiff identifies Steven Sayers, the Superintendent for the Board, and otherwise unidentified "John Doe" as defendants. As for the "John Doe" defendants, there is no evidence that anyone other than the two named defendants were ever served in this matter.

[2] To the extent that Mr. Sayers is sued in his individual capacity, he is not a proper party inasmuch as individual supervisors, who do not otherwise qualify as an "employer," may not be held personally liable under the ADEA. *Stults v. Conoco, Inc.* 76 F.3d 651, 655 (5th Cir. 1996); *Howard v. DaimlerChrysler Corp.,* 290 F. Supp. 2d 784, 791-92 (E.D. Mich. 2003). *See Wathen v. G.E.,* 115 F.3d 400, 404-05 (6th Cir. 1997) (interpreting Title VII but also finding liability schemes under Title VII, the ADEA, and the ADA essentially the same in aspects relevant to this issue).

No. 27). Plaintiff opposes the motion (Docket No. 30). Defendants have also filed a motion for partial judgment on the pleadings, under Fed. R. Civ. P. 12(c), seeking dismissal of plaintiff's common law state claims contained in Counts II, II, IV, and V of the Amended Complaint (Docket No. 19). Finally, plaintiff has filed a motion for leave to amend the pleadings (Docket No. 20), and a motion styled "Plaintiff's Supplement to Plaintiff's Partial Motion to Dismiss Various Claims" (Docket No. 33).

For the reasons that follow, defendant Board's summary judgment motion is **GRANTED**. Likewise, plaintiff's "motion" to dismiss the common law claims is also **GRANTED**, and defendants' motion for partial judgment on the pleadings is **DENIED** as moot.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

While it is unclear from the record when plaintiff began her professional relationship with the Board, it is clear that she was employed by the Board as a special education tutor during the 2003-2004 school year.[3]  At the time, plaintiff was 52 years of age (*See* Docket No. 30, Attachment 2, Affidavit of Barbara Somogy at ¶ 1). It is also clear that Superintendent Steven Sayers recommended plaintiff to the Board (Plaintiff Dep. at 8). Plaintiff continued to serve as a special education tutor for the Board for the 2004-2005 school year.

During the spring of 2005, an opening became available for a special education teacher at Waynedale High School. The job was posted, and plaintiff applied for the position (Docket No. 30, Attachment 1, Affidavit of Steven Sayers I at ¶ 4-5). One of the requirements for this position was a valid license to teach special education (Sayers Aff. I at ¶ 14, Ex. A).

---

[3] Plaintiff maintains, without support, that she was first employed by the Board as a substitute teacher "around 2000." If, indeed, plaintiff was first hired by the Board in 2000, she would have been 49 at the time. She also claims that she served as a substitute teacher during the spring of the 2002-2003 school year (Docket No. 30 at 2).

The position was ultimately awarded to Julie DeMassimo, who had been serving as a special education teacher in an area middle school. *Id*. Ms. DeMassimo had earned a Bachelor of Arts degree with a double major in special education and elementary education. *Id*. at ¶ 7. Ms. DeMassimo also held a four year license from the State of Ohio Board of Education for education of the handicapped (grades kindergarten – 12), specific learning disabled (kindergarten – 12), and developmentally handicapped (kindergarten – 12) for the period from July 1, 2001 to June 30, 2005. *Id*. at ¶ 8. At the time of her transfer to the high school, Ms. DeMassimo was under the age of 40.

A second opening for a special education teacher at the high school became available in June of 2005. Again, the job was posted, and, again, plaintiff applied for the position (Sayers Aff. I at ¶ 11). This position was ultimately awarded to Brianne Morlock, who was under the age of 40. *Id*. at ¶ 12. Ms. Morlock had earned a Bachelor of Science degree in education with a major in special education.[4] *Id*. at ¶ 13. Mr. Sayers recommended Ms. Morlock to the Board because she had a major in special education and the required license from the State of Ohio for the 2005-2006 school year. Sayers Aff. I at ¶ 16.

As for plaintiff's credentials, she had earned a Bachelor of Science degree in elementary education in 1996. Plaintiff held a five year license to teach grades kindergarten through eighth grade, which was valid from July 1, 2002 until June 30, 2007 (Docket No. 30, Attachment 1, Ex. A). The record also shows that plaintiff had secured two temporary license to serve as an "intervention specialist." The first license was valid form July 1, 2003 to June 30, 2004. The second license was valid from July 1, 2004 to June 30, 2005. It is not disputed that plaintiff's temporary intervention specialist license had expired before she had applied for the

---

[4] From the record, it appears that the term "intervention specialist" refers to a person qualified to teach special education (*See* Docket No. 27 at 4; Sayers Aff. I at ¶ 13).

second position (Plaintiff Dep. at 25).

Plaintiff initiated the present action on December 21, 2006. In her Amended Complaint, plaintiff claims that the decisions to hire Ms. DeMissmo and Ms. Morlock were motivated by age animus, in violation of the ADEA, 29 U.S.C. § 621 *et seq*. Plaintiff also brings common law state claims for breach of implied contract, defamation, wrongful discharge in violation of public policy, and tortuous interference with contract.

In its summary judgment motion, the Board argues that plaintiff cannot establish even a *prima facie* case of age discrimination because she was not qualified for the positions and that, in any event, the candidates selected over plaintiff were more qualified than plaintiff. The Board further insists that plaintiff has failed to offer any evidence that its legitimate, non-discriminatory reasons for selecting younger candidates were merely a pretext for unlawful age discrimination.

## II.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law [ . . .].

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the  matters stated therein [. . .]. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for

4

> summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), *citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988).  The non-moving party is under an affirmative duty to point out specific facts in the record as it has

been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

While plaintiff initiated the action with the assistance of counsel, and, thus, had the benefit of counsel at the pleadings stage, her counsel withdrew from the case prior to the filing of dispositive motions. Given her *pro se* status, the Court shall apply a liberal interpretation to her submissions. *See Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). With this in mind, and against this legal backdrop, the Court considers the dispositive motions.

## I.

## LAW AND ANALYSIS

### A.   Discovery Issues

In defense of summary judgment, plaintiff complains, for the first time, that defendants' answers to certain discovery requests were inadequate. Plaintiff also notes that defendants have not yet responded to plaintiff's First Request for Production of Documents, and suggests that a ruling on summary judgment at this juncture would be "premature because the record cutoff date for all discovery was set for September 5, 2007 by Judge Gwin"[5] (Docket No. 30 at 14).

Generally, dispositive motions should not be considered until after the close of discovery. *See Ramik v. Darling Int'l, Inc.*, 161 F. Supp. 2d 772, 776, n. 1 (E.D. Mich. 2001). In the Court's Case Management Plan/Order, the Court identified two dates relating to the completion of discovery:  June 25, 2007 and September 5, 2007. While all discovery was to be

---

[5] This matter was originally assigned to the docket of the Honorable James S. Gwin. The action was transferred to the docket of the Honorable Sara Lioi on March 19, 2007.

completed by September 5, 2007, the Court clearly identified June 25, 2007 as the deadline for "completing discovery needed to support or defend dispositive motions […]" (Docket No. 13).[6] As such, plaintiff's "First Request for Production of Documents," which was served on June 25, 2007, was filed beyond the time set by the Court for discovery of matters relating to the dispositive motions. *See Adams v. Budd Co.*, 1987 U.S. Dist. LEXIS 14657, *4 (N.D. Ind. Feb. 9, 1987) ("Requests for discovery must be made in sufficient time to allow the opposing party to respond before the termination of discovery"). Having afforded the parties an adequate time for discovery, and noting further that plaintiff failed to seek an extension of the June 25, 2007 discovery deadline, the Court finds that summary judgment is appropriately considered at this time. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

At the outset, the Court observes that plaintiff has failed to demonstrate that she complied with Local Rule 37.1. Specifically, there is no evidence that plaintiff engaged defendants in a good faith effort to resolve any discovery disputes, as required by Rule 37.1(a)(1). Nor, following such an effort, did plaintiff submit the matter to the Court for the purpose of conducting a telephonic conference under Rule 37.1(a)(2). Plaintiff's attempt to raise the dispute in opposition to summary judgment must be rejected as untimely as it is raised more than 10 days after the June 25, 2007 discovery cut-off date. *See* Rule 37.1(b).

Furthermore, the Court finds no evidence that defendants failed to engage in discovery in good faith, or that they were unduly restrictive in their responses to plaintiff's discovery requests. Plaintiff directs the Court's attention to plaintiff's first set of interrogatories, and, specifically, to a question that sought detailed information for "each job vacancy which the

---

[6] While the Court has, upon request, extended the briefing schedule to afford both sides sufficient time to present the issues raised in the dispositive motions, the remaining dates contained in the Court's Case Management Conference Plan/Order have remained intact.

defendant has sought to fill during the past five years […]." (Docket No. 30, Ex. M-N). Defendants properly limited their response to information relating to the job vacancies that are at issue in the present case. Despite plaintiff's belief that a review of all of defendants' hiring decisions might have generated evidence of a pattern of discrimination, discovery must be reasonably limited to avoid "a fishing expedition masquerading as discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

### B. <u>State Law Claims</u>

Following the submission of defendants' motion for judgment on the pleadings on plaintiff's state common law claims (Docket No. 19), plaintiff filed a motion styled "Motion to Stay the Decision on Defendants' Motion for Partial Judgment on the Pleadings, or, Partial Motion to Dismiss Various Counts"(Docket No. 25). In her motion, plaintiff requested leave to dismiss her state law claims so that she could "focus on the primary charge against Defendants;" namely, her ADEA claim. In light of plaintiff's *pro se* status, the Court instructed plaintiff to indicate in writing either that she intended to dismiss these claims with prejudice or that she intended to defend defendants' motion for judgment on the pleadings on these claims (Docket No. 29).

Plaintiff has subsequently filed a document styled "Plaintiff's Supplement to Plaintiff's Partial Motion to Dismiss Various Claims" (Docket No. 33). In this supplemental filing, plaintiff renews her request to dismiss the state law claims, and further notes that she "understands this dismissal will be with prejudice, so that plaintiff may not re-file the claim, based upon the same factual and legal basis, at a later time." The Court is confident that plaintiff understands the significance of a dismissal with prejudice. Consequently, the Court **GRANTS** plaintiff's supplemental motion, and **DISMISSES** Counts II, III, IV, and V. The Court now turns

its attention to the remaining ADEA claim.

**C.   ADEA Claim**

An ADEA plaintiff will survive summary judgment if she presents direct evidence that the adverse employment action was taken because of her age. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994). Direct evidence of discrimination would be evidence that, if believed, would prove the existence of a fact in issue without an inference or presumption. *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 548 (6th Cir. 2004). "Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, […] constitute direct evidence of discrimination." *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989). It is beyond dispute, however, that plaintiff cannot point to age-based remarks made by decision-makers or policy makers.

Even without direct evidence of age discrimination, an ADEA plaintiff may still make a submissible case of discrimination by presenting evidence from which the jury may infer an invidious and discriminatory intent behind the employment decision. The process by which the sufficiency of such a case is tested was first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and the same analysis is generally applied in ADEA cases. *See Chappell v. GTE Products Corp.*, 803 F.2d 261, 265 (6th Cir. 1986). The burden of proof established in *McDonnell Douglas*, and later clarified by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981), is divided into three stages.

At the first stage, the plaintiff must prove a *prima facie* case of age discrimination. *Burdine*, 450 U.S. at 252-53. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id., quoting McDonnell Douglas*, 411 U.S. at 804. If defendant

meets this burden, the final stage requires the plaintiff to prove that the proffered reason was merely a pretext for unlawful discrimination. *Burdine,* 450 U.S. at 253, *citing McDonnell Douglas*, 411 U.S. at 804. Pretext is established by a direct showing that "a discriminatory reason more likely motivated the employer or by an indirect showing that the employer's explanation is not credible." *Burdine,* 450 U.S. at 256. *See Kline v. TVA*, 128 F.3d 337, 342-43 (6th Cir. 1997).

### 1.    *Prima Facie Case*

To make out a *prima facie* case of age discrimination, a plaintiff must show that: (1) she was in the protected age group; (2) she suffered an adverse employment action; (3) she was qualified for the position either lost or not gained; and (4) a person not of the protected class replaced, or was selected over, the plaintiff.[7] *Chappell*, 803 F.2d at 266; *Gagne v. Northewestern Nat'l Ins. Co.*, 881 F.2d 309, 313 (6th Cir. 1989); *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir. 1982).

The Board concedes that plaintiff is a member of the protected class, that she suffered an adverse employment action when she was not selected for either of the special education high school teacher positions, and that individuals outside of the protected class were selected over her. It is the board's position, however, that plaintiff cannot establish a *prima facie* case of discrimination because she cannot show that she was qualified for the position in question. The Court disagrees.

According to the Board's posting, a "certificate/license to teach Special Education is required" (Sayers Aff. I at ¶ 14, Ex. A and E). Plaintiff held a five year license to teach elementary education that was valid from July 1, 2002 to June 30, 2007 (Docket No. 30,

---

[7] In an age discrimination context, the Sixth Circuit has held that a *prima facie* case has been shown where the plaintiff was replaced by someone younger, even though that person may still be within the protected class of persons over the age of 40. *See Barnes v. GenCorp., Inc.* 896 F.2d 1457, 1466 (6th Cir. 1990).

Ex. A). Her license to teach special education, however, was a temporary license, which was only valid from July 1, 2004 to June 30, 2005 (Docket No. 30, Ex. B). It is the Board's position that plaintiff was not qualified because she did not have a valid license at the time she applied for the vacancies in questions.

There are two problems with this argument. First, the record shows that the first position was filled by Ms. DeMassimo on April 18, 2005, when the Board accepted the recommendation of Superintendent Sayers to appoint Ms. DeMassimo (Sayers Aff. I at 10, Ex. 10). Without question, plaintiff's temporary license was still valid in April of 2005.

The second deficiency in the Board's argument relates to the position eventually filled by Ms. Morlock. Plaintiff does not dispute the fact that her temporary license had expired on June 30, 2005, before she applied for the second position (Plaintiff's Dep. at 25). In fact, plaintiff concedes that she had not even taken steps to secure a renewal when she applied. *Id*. Nonetheless, plaintiff notes that "all licenses lapse on June 30 of a given year. Licenses renewed during the following year are made valid retroactively from the very next day, i.e. July 1" (Docket No. 30 at 16).

The record supports plaintiff's argument. Not only do plaintiff's temporary licenses appear to have been made retroactive to the day after the preceding license expired, but Ms. Morlock's license also follows this pattern. While her two-year provisional license was issued on July 22, 2005, it was valid from July 1, 2005 to June 30, 2007 (Sayers Aff. I, Ex. F).

"Therefore, the question was not whether [plaintiff] held a professional teacher's certificate when [s]he applied for the positions but whether [plaintiff] was qualified to receive additional provisional certificates that would allow [her] to teach without the permanent

certification." *Farmer v. Dothan City Sch.,* 2006 U.S. Dist. LEXIS 9270, *33 (M.D. Ala. Jan. 11, 2006). Plaintiff argues, and the Board does not dispute, that she was entitled to a renewal of her temporary license. As such, the Court finds that plaintiff was qualified for the position. *See e.g., Farmer*, 2006 U.S. Dist. LEXIS 9270 at * 34-35 (plaintiff was qualified for a teaching position where he showed that he was entitled to renew his temporary teaching certificate). Having satisfied all four prongs of the test, plaintiff has made out a *prima facie* case.

**2.      *The Board's Legitimate, Non-Discriminatory Reason***

As plaintiff has met her initial burden of proof, the burden shifts to the Board to proffer a legitimate, non-discriminatory reason for the adverse employment decisions. *See Burdine*, 450 U.S. at 254. The *Burdine* Court emphasized that this burden is merely one of "production" because "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Id*. at 253.

The Board easily meets this burden by suggesting that each candidate selected was more qualified than plaintiff. With respect to Ms. DeMassimo, the Board notes that she had a four year degree with a double major in special education and elementary education. Compared to plaintiff, who did not major in special education, the Board argues Ms. DeMassimo was more qualified to teach in the area of special education (Docket No. 27 at 4). The Board also draws the Court's attention to the fact that Ms. DeMassimo, as a "current teacher who possess[es] the proper certification/lincensure for the position," was entitled to first consideration for the vacancy under the collective bargaining agreement between the Board and the teachers' union[8] (Docket No. 27 at 3; Sayers Aff. I at ¶ 6).

As for the second position, the Board, once again, represents that Ms.

---

[8] Plaintiff was not entitled to the same deference. Article I of the CBA specifically excludes tutors from certain rights, including the right to preferential treatment under Article VI, § B.4 (Sayers Aff. I at ¶ 6).

Morlock was selected over plaintiff because Ms. Morlock possessed superior qualifications. In support of this conclusion, the Board underscores the fact that Ms. Morlock held a degree in special education, while plaintiff's degree was limited to elementary education. The Board also notes that Ms. Morlock met the requirements for a "Highly Qualified Teacher" (HQT), under 20 U.S.C. § 7801(23), and plaintiff did not. *See Farmer,* 2006 U.S. Dist. LEXIS 9270 at *37 (selecting a teacher that was a HQT over a candidate that was not, was a legitimate, non-discriminatory reason).

### 3. Pretext

Thus, the burden shifts back to plaintiff to demonstrate that the proffered reason is nothing more than a pretext for unlawful discrimination. *See Burdine*, 450 U.S. at 255. As the Board observes in its reply, plaintiff does not challenge the Board's position that she was less qualified than Ms. DeMassimo. In fact, beyond defending her own qualifications for the position of high school special education teacher, plaintiff does not point to any evidence that the Board's stated reason for selecting Ms. DeMassimo over her was pretextual. As such, plaintiff has not met her burden of persuasion as to the first position.

Plaintiff does, however, challenge the Board's stated reason for awarding the second position to Ms. Morlock. Specifically, plaintiff points out that Ms. Morlock had only recently graduated from college and had no experience working in the Southeast Local School District (Docket No. 30 at 15). In contrast, plaintiff notes that she "had experience as an educator spanning the 1980s, 1990s, and 2000s." *Id.* at 16. Plaintiff also highlights the fact that she graduated from college with the distinction "summa cum laude," while Ms. Morlock graduated "magna cum laude." Plaintiff adds that "[t]hough both of these honors indicate high marks of achievement, *summa* is simply better than *magna*." *Id.*

13

The Board was entitled to base its decision, in part, upon the fact that Ms. Morlock had majored in special education, while plaintiff's college course work was focused in the more general area of elementary education. The fact that the Board gave more weight to the nature of the degrees held by the candidates than to experience in the field does not raise an inference of unlawful age animus. Moreover, plaintiff's subjective view of the value of her qualifications in relation to those of other applicants, without more, cannot sustain a claim of discrimination. *Hendrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004). The Court does not sit as a "super-personnel department" and it will not second-guess the business practices of its employers. *Meacham v. Knolls Atomic Power Lab.*, 461 F.3d 134, 146 (2nd Cir. 2006); *Hendrick*, 355 F.3d at 462.

Nor does plaintiff's belief that the "School District [] displayed an observable preference for hiring young teachers" support a finding of pretext. On this point, plaintiff offers that she "often heard that other older applicants with experience were applying for but were not being hired for teaching positions" (Docket No. 30 at 18). Plaintiff also supplies the names of teachers that plaintiff believes were under the age of 40 and were offered positions (Plaintiff's Aff. at ¶ 32). Of course, plaintiff's observations and suspicions, coupled with vague hearsay statements, cannot support a finding of pretext. *See Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 620 (6th Cir. 2003) (the general rule is that hearsay is inadmissible and "cannot be considered on a motion for summary judgment").

Ultimately, however, summary dismissal of this action is appropriate because plaintiff cannot overcome the fact that Ms. Morlock met the requirements of a "Highly

Qualified Teacher" (HQT) and she did not.[9] The No Child Left Behind Act (NCLBA), 20 U.S.C. § 6301, is a comprehensive education reform statute directed at state public schools. The purpose of the NCLBA is to "ensure that all children have a fair, equal and significant opportunity to obtain a high quality education and reach, at a minimum, proficiency on challenging State academic achievement standards and state academic assessments." 20 U.S.C. § 6301.

In order to accomplish the NCLBA's objective, the statute charges state and local agencies with the hiring, retention and continued professional development of "qualified" teachers. 20 U.S.C. § 6319(a)(1) ("[E]ach local educational agency receiving assistance under this part shall ensure that all teachers hired after such day and teaching in a program supported with funds under this part are highly qualified.") Under the NCLBA, the Board was required to attempt to fill the vacancy with a HQT[10] (Sayers Aff. II at ¶ 3).  If the Board had chosen to award the position to an individual who did not meet the requirements of a HQT, it would have to have certified to the Ohio Department of Education, in writing, that no "highly qualified teacher" or fully licensed teacher was available for appointment (Sayers Aff. II at ¶ 4). A failure to make a good faith effort to employ "highly qualified" teachers can result in a loss of federal funding. See 20 U.S.C. § 6311(g)(2).

For the 2005-2006 school year, a HQT special education high school teacher had to meet two threshold requirements: she had to have at least a bachelor's degree, and she had to hold a full state certification/licensure in the teaching area (Sayers Aff. II at ¶ 6, Ex. I, Form D). Both candidates held bachelor's degrees. However, only Ms. Morlock held a full state certification/licensure in special education. At the time Ms. Morlock was hired, full licensure

---

[9] The Board also offers the fact that plaintiff did not qualify as a "Highly Qualified Teacher" as evidence that she was unqualified for purposes of the *McDonnell Douglas prima facie* case. Because the absence of a HQT rating does not necessarily render a teacher unqualified or ineligible for the positions in question, only less desirable than other candidates with the HQT designation, this argument is more appropriately addressed in the context of pretext.

[10] This mandate is reflected in the Board's advertised posting for this position, which provides that "[p]reference will be given to those candidates that meet Highly Qualified Teacher requirements" (Sayers Aff. I, Ex. E).

was defined as one who had at least a provisional license (Sayers Aff. II at ¶ 14, Ex. I, Form D). Plaintiff's temporary license, even if she had renewed it, would not have qualified as a "full state certification/licensure" for HQT status.[11] Id.

Assuming both of the threshold requirements are met, a teacher must also possess one of seven enumerated qualifications to be considered a HQT. These requirements are: a passing mark on the Ohio's State License Exam; an academic major or its equivalent in the content area; a master's degree in the content area; an eight year professional certificate in the content area; a permanent certificate in the content area; a National Board Certification in the content area; or 90 "clock hours" distributed over various subjects within the content area (Sayers Aff. II, Ex. I, Form B).

There is no evidence in the record to suggest that plaintiff met any of these additional requirements. In contrast, Ms. Morlock majored in special education and had at least 30 semester hours of coursework devoted to special education (Sayers Aff. II at ¶ 8). As such, she qualified for HQT status under the NCLBA. The Board had both the right and the legal duty to give significant weight to this designation in rendering its hiring decision.[12]

Plaintiff has failed to offer more than a mere scintilla of evidence in support of her claim that the Board's unwillingness to offer her a position as a special education teacher was the result of unlawful age discrimination. With respect to plaintiff's ADEA claim, there are no genuine issues of material fact that require a jury trial. As such, summary judgment

---

[11] Form D contains a note denoted by an asterisk, which states: "Temporary, conditional or substitute licenses/certificates do not meet this requirement. One must hold at least a provisional license/certificate or be in an approved alternative licensure program."

[12] The Board also argues that the "same actor" defense, first articulated in *Proud v. Stone*, 945 F.2d 796 (4th Cir. 1991), applies because Superintendent Sayers recommended plaintiff for the position of special education tutor just two years prior to passing over plaintiff for the position of special education high school teacher (Docket No. 27 at 10-12). *See Buhrmaster v. Overnite Trans. Co.*, 61 F.3d 461 (6th Cir. 1995). The Court does not rely on this theory in its ruling inasmuch as it is unclear from the record whether Superintendent Sayers had sole authority to recommend candidates for hire. *See Zambetti v. Cuyahoga Cmty. College*, 314 F.3d 249, 261 (6th Cir. 2002).

in favor of the Board is appropriate.

## IV.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Board's motion for summary judgment on plaintiff's ADEA claim (Docket No. 27) is **GRANTED**, plaintiff's motion to dismiss the common law claims (Docket No. 33) is **GRANTED**, and defendants' motion for partial judgment on the pleadings (Docket No. 19) is **DENIED** as moot. All claims against all defendants are dismissed, and this case is closed.

**IT IS SO ORDERED.**

Dated: August 31, 2007                                  *s/ Sara Lioi*
                                                        Hon. Sara Lioi
                                                        United States District Judge